UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Hubert Dymitr Haraszewski,<br><br>　　　　　　　　　　Plaintiff,<br>v.<br>Lisa Brannan et al.,<br>　　　　　　　　　　Defendants. | Civil No 10cv546 LAB (PCL)<br><br>**REPORT AND RECOMMENDATION:**<br><br>**GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. 80);**<br><br>**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 80); AND**<br><br>**DENYING PLAINTIFF'S MOTION TO AMEND (Doc. 88.)** |

　　This Report and Recommendation is submitted to United States District Judge Larry Alan Burns, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1 of the United States District Court for the Southern District of California.

**I. INTRODUCTION**

　　Hubert Dymitr Haraszewski ("Plaintiff"), a California state prisoner incarcerated at Mule Creek State Prison and proceeding *pro se*, filed a Second Amended Complaint pursuant to 42 U.S.C. § 1983. (Doc. 52.) Plaintiff claims Defendants Lisa Brannan, police investigator, John Morgans, District Attorney Investigator, and Patricia Lavermicocca, Deputy District Attorney, violated his right to Due Process by placing him in Administrative Segregation (Ad-Seg) for two weeks at the Vista Detention

Facility ("VDF") while he was a pretrial detainee there. (Id. at 2-3.) Plaintiff claims he was denied a due process hearing throughout his three weeks in Ad-Seg. (Doc. 52, at 5.) Defendants filed a motion for summary judgment, asserting that (1) no evidence suggests that the Ad-Seg placement was done with the express intent to punish Plaintiff; (2) such intent cannot be inferred because they reasonably thought that the placement would serve the legitimate, non-punitive objective of limiting Plaintiff's ability to contact his victims by mail or telephone; (3) they are entitled to qualified immunity; and (4) Plaintiff failed to exhaust administrative remedies. (Doc. 80-1, at 6.) Plaintiff filed a supplemental brief in opposition to Defendants' summary judgment motion on exhaustion grounds but otherwise did not file on the docket an opposition to Defendants' entire summary judgment motion.[1] (Doc. 107.) Having considered the motion and Plaintiff's response, including supplemental briefing on the exhaustion issue, the Court recommends that Plaintiff's Second Amended Complaint be DISMISSED for failure to exhaust administrative remedies and that Defendants' Motion for Summary Judgment be GRANTED on qualified immunity grounds. The Court also recommends that Plaintiff's motion to amend his complaint be DENIED.

**FACTUAL BACKGROUND**

In September 2009, Plaintiff was a pretrial detainee at VDF awaiting trial on various sex crimes charges involving four minor victims. (Declaration of Patricia Lavermicocca, Doc. 80-3, at 1.) He was held in protective custody during this time. (Declaration of Greg Rose, Doc. 80-4, at 3.) Through various protective orders, Plaintiff was prohibited from "personal, electronic, telephonic, or written contact" with the minor victims, as well as "contact ... through a third party." (Doc. 80-2, Exhibits A, B, and C.) A few days prior to his September 8, 2009 trial, Plaintiff sent letters to two of his alleged victims. (Doc. 80-3, Exhibits E, L.) On September 11, 2009, Defendant Lavermicocca, Deputy District Attorney (DDA), learned that Plaintiff had contacted the two victims. (Lavermicocca Decl., Doc. 80-3, at 2.) On September 14, 2009, Defendant Lavermicocca appeared ex parte before Judge Goldstein regarding Plaintiff's violation of the protective orders. (Id.) Judge Goldstein ordered the seizure of all documents and photographs from Plaintiff's cell at VDF. (Id.) Also on September 14, Defendant

---

[1] In his brief entitled "Supplemental briefing," Plaintiff claims that he had filed an opposition to Defendants' summary judgment motion. However, the Court has not received this document.

1  Lavermicocca asked DA Investigator Morgans to contact officials at VDF to find out what they could do
2  to prevent Plaintiff from contacting victims. (Lavermicocca Decl., Doc. 80-3, at 3.) Defendant Morgans
3  advised Defendant Lavermicocca that Plaintiff could be placed in Administrative Segregation, and
4  Defendant Lavermicocca agreed to place him in Ad-Seg based on the understanding that this would
5  limit Plaintiff's contact with other inmates and his phone access. (Id. at 3-4.) Detective Kopchak
6  informed Deputy Frierson, a classification deputy at VDF, that Plaintiff had violated a court order
7  prohibiting him from contacting his victims, and that Defendant Morgans wanted him to be more closely
8  monitored. (Rose Decl., Doc. 80-4, at 3.) Deputy Frierson exercised his discretionary authority and
9  placed Plaintiff in Ad-Seg. (Id.) Defendant Lisa Brannan, Detective, denied any involvement in
10 Plaintiff's Ad-Seg placement. (Doc. 80-2, at 24-25 (Exhibit G).) Plaintiff remained in Ad-Seg until
11 September 27, 2009, a total of 14 days. (Rose Decl., Doc. 80-4, at 4.)

12    Plaintiff claimed he submitted multiple requests for an explanation for his isolation while in Ad-
13 Seg but received no immediate response from the jail officers. (Doc. 52, at 2-3.) On September 29,
14 2009, Plaintiff filed two grievances regarding his placement in Ad-Seg (Doc. 80-2, at 34-41, Exhibits J
15 and K), which were acted upon on October 3, 2009 (Doc. 103-1, at 4). In his response to the grievance,
16 Sgt. Weidenthaler told Plaintiff that the move to Ad-Seg was at the request of the District Attorney's
17 Office, specifically John Morgans, and approved on a temporary basis by Lt. Hillen. (Id.) The Grievance
18 Report stated that two different deputies, Frierson and Williams, told Plaintiff in person why he was
19 moved but did not document the conversation. (Id. at 5.) The report concludes that Plaintiff was "testing
20 multiple sources in an effort to check the consistency of responses." (Id. at 5.)

21    Plaintiff submitted briefing (not a sworn affidavit or declaration) that he attempted "numerous"
22 times from September 14 to September 27 while in isolation in Ad-Seg to make verbal inquiries, to file
23 written requests, and to file grievances, but that "at least four written or countless verbal complaints ever
24 yielded any response." (Doc. 107, at 1.) After he was released from Ad-Seg, Plaintiff alleges that he
25 attempted to file a grievance "on every shift, but no deputy accepted the form until September 29, when
26 Deputy Williams finally took it, then proceeded to threaten and intimidate me, throwing the grievance
27 form away rather than returning it to me." (Id. at 1-2.) Defendants submitted to the Court the two
28 grievances that Plaintiff filed, which are documented as being received by Sgt. Weidenthaler on October

1, 2009. (Doc. 80-2, at 35-41, Exhibits J and K.) In his first grievance, Plaintiff requested an explanation for his Ad-Seg placement starting on September 14, 2009. (Doc. 80-2, Exhibit J.) In his grievance, Plaintiff did not specifically state that he was placed in Ad-Seg improperly without an administrative hearing. (Id.)  In his second grievance, Plaintiff complained of improper treatment of his previous attempt to file a grievance regarding his Ad-Seg placement by jail staff. (Doc. 80-2, at 38-39, Exhibit K.) Defendants submitted the Grievance Report for the two grievances written by Sgt. Weidenthaler and submitted on October 3, 2009. (Doc. 103-1, at 4-5.) In it, Sgt. Weidenthaler stated that both Deputies Frierson and Williams told Plaintiff why he was moved but did not document any details of the conversation. (Id. at 5.) Sgt. Weidenthaler wrote that he told Plaintiff that "Mr. Morgans of the District Attorney's Office requested the temporary move." (Id.) The report concluded that the move was approved on a temporary basis by Lt. Hillen. (Id. at 4.)

      Moreover, Plaintiff confirmed that Sgt. Weidenthaler "accepted the form and responded that it was not 'his people' who ordered the segregation." (Doc. 52, at 2.) Sgt. Weidenthaler, in a signed declaration, stated that he accepted two grievances from Plaintiff, signed the grievances, and then documented them in the Jail Information Management System (JIMS) by way of a Grievance Report, which also described his response to the grievances. (Doc. 103-1, at 2.) After Plaintiff received the response to his initial grievance, Plaintiff allegedly was told that his grievances "couldn't be appealed beyond [Sgt. Weidenthaler and another, unidentified Sergeant's] review." (Doc. 52, at 4.) However, Sgt. Weidenthaler stated that although he did not recall his conversation with Plaintiff after he handed him his response to the grievance, he did not believe that he would inform Plaintiff that his response to the grievance could not be appealed to a higher level of review, as this would directly contradict the Grievance Procedure and instructions provided to Plaintiff on the J-22 Inmate Grievance Form. (Decl. of Weidenthaler, Doc. 103-1, at 2.) Also in a signed declaration, Sgt. Wicklander stated that after reviewing Plaintiff's booking jacket as well as the JIMS records, he found that Plaintiff submitted two grievances on September 29, 2009 and that both grievances were received by Sgt. Weidenthaler on October 1, 2009. (Decl. of Wicklander, Doc. 103-2, at 2.) Sgt. Wicklander also stated that the booking file and the JIMS records contained no records indicating that Plaintiff ever appealed his grievances to VDF's Grievance Review Officer or Facility Commander. (Id.) Plaintiff did not complete second level

1  review of his grievance by VDF's Grievance Review Officer, or third level review by the Facility
2  Commander. (Stephanie Kish Decl., Doc. 80-2, at 2.)
3       Plaintiff acknowledged in his supplemental brief in opposition to the Defendants' summary
4  judgment motion that after allegedly being thwarted by various deputies from filing a first-level
5  grievance, he eventually succeeded in obtaining a first-level response from the jail. (Doc. 107, at 2.)
6  Then, on November 18, 2009, "after no deputies would accept [his] grievances for an entire month," he
7  allegedly submitted a grievance through institutional mail, but it was returned to him "without the white
8  cover sheet, as if [it had] been processed, but [his] copy showed no record of JIMS entry." (Doc. 107, at
9  3.) Plaintiff supplied a copy of the grievance form to the Court as evidence. (Doc. 107, at 7-12.) In the
10 grievance form dated November 18, 2009, Plaintiff complained that he was placed in Ad-Seg without an
11 explanation and without a disciplinary hearing in violation of his due process rights. (Doc. 107, at 7-8.)
12 This grievance form was not signed by a jail staff member. (Id.) Finally, Plaintiff submitted a four-page
13 letter on the Sheriff's Department's grievance form on December 23, 2009, which was received on
14 January 11, 2010. (Doc. 107, at 9-10.) This form was not entered in the JIMS because it was deemed an
15 inmate request, not a grievance. (Id. at 9.) In the letter, Plaintiff complained that he was placed in Ad-
16 Seg at the direction of DA Investigator Morgans and that he had been consistently stonewalled by
17 deputies who refused to accept his grievances for a variety of reasons, including because the action was
18 not deemed a jail grievance because DA Investigators and detectives are not considered jail staff. (Doc.
19 107, at 9-10.) The grievance form shows that Sgt. Kanoss signed the form on January 11, 2010, but that
20 he deemed it not a grievance but an inmate request. (Id. at 9.) In his response to the inmate request, Sgt.
21 Kanoss stated the following: "This is not grievable at the level seek guidance through attorney." (Id.)

## III.  STANDARD OF REVIEW

23 Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as
24 to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P.
25 56(c); Adickes v. SH. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema,
26 Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). Thus, a motion for summary judgment under FED. R. CIV. P.
27 56 addresses the sufficiency of the evidence, or of the law, to support the plaintiff's claims. Warren v.
28 City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). The party seeking summary judgment bears the

1  initial burden of informing the court of the basis for its motion and of identifying the portions of the
2  declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of
3  material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc.,
4  509 F.3d 978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under
5  the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A dispute is
6  "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for
7  the non-moving party. Anderson, 477 U.S. at 248; Long v. County of Los Angeles, 442 F.3d 1178, 1185
8  (9th Cir. 2006).

9  Where the moving party will have the burden of proof on an issue at trial, the movant must
10 affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremek-
11 un, 509 F.3d at 984. Where the non-moving party will have the burden of proof on an issue at trial, the
12 movant may prevail by presenting evidence that negates an essential element of the non-moving party's
13 claim or by merely pointing out that there is an absence of evidence to support an essential element of
14 the non-moving party's claim. Id.; Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099,
15 1105 (9th Cir. 2000). If a moving party fails to carry its burden of production, then "the non-moving
16 party has no obligation to produce anything, even if the non-moving party would have the ultimate
17 burden of persuasion." Nissan Fire & Marine, 210 F.3d at 1102. If the moving party meets its initial
18 burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material
19 fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986);
20 Nissan Fire & Marine, 210 F.3d at 1103. The opposing party cannot "'rest upon the mere allegations or
21 denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that
22 there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030
23 (9th Cir. 2008) (quoting FED. R. CIV. P. 56(e)).

24 The evidence of the opposing party is to be believed, and all reasonable inferences that may be
25 drawn from the facts placed before the court must be drawn in favor of the opposing party. See
26 Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Stegall v. Citadel Broad, Inc., 350 F.3d 1061,
27 1065 (9th Cir. 2003). Nevertheless, inferences are not drawn out of the air; rather, it is the opposing
28 party's obligation to produce a factual predicate from which the inference may be drawn. See Juell v.

1  Forest Pharms., Inc., 456 F. Supp. 2d 1141, 1149 (E.D. Cal. 2006); UMG Recordings, Inc. v. Sinnott,
2  300 F. Supp. 2d 993, 997 (E.D. Cal. 2004). "A genuine issue of material fact does not spring into being
3  simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del
4  Carmen Guadalupe v.. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles,
5  477 F.3d 652, 658 (9th Cir. 2007).  Further, a "motion for summary judgment may not be defeated . . .
6  by evidence that is 'merely colorable' or 'is not significantly probative.'" Anderson, 477 U.S. at 249;
7  Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006). Self-serving declarations, uncorrobo-
8  rated by other testimony or other persuasive evidence, cannot create a genuine issue of fact sufficient to
9  defeat summary judgment. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).
10 Additionally, while the court has the discretion in appropriate circumstances to consider materials that
11 are not properly brought to its attention, the court is not required to examine the entire file for evidence
12 establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers
13 with adequate references. See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir.
14 2003); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). After
15 discovery, if the non-moving party fails to produce evidence sufficient to create a genuine issue of
16 material fact, the moving party is entitled to summary judgment. See Nissan Fire & Marine, 210 F.3d at
17 1103.

18        The Ninth Circuit has held that "failure to exhaust nonjudicial remedies is a matter in abatement,
19 not going to the merits of the claim, and as such is not properly raised in a motion for summary
20 judgment." Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir.
21 1988). However, "when a defendant files a summary judgment motion that raises the issue of exhaustion
22 of non-judicial remedies, the motion should be treated as a 'nonenumerated' motion to dismiss under
23 Federal Rule of Civil Procedure 12(b)." Irvin v. Zamora, 161 F. Supp. 1125, 1128 (S.D. Cal. 2001)
24 (citing Ritza, 837 F.2d 368-69). When "a factual issue arises in connection with a jurisdictional or
25 related type of motion, the general view is that there is no right of jury trial as to that issue ... and that
26 the Court has a broad discretion as to the method to be used in resolving the factual dispute." Ritza v.
27 Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988). As such, the
28 standard of review in evaluating exhaustion is broadened beyond the normal scope of a standard 12(b)

1 motion. See Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir. 2003). In deciding a motion to dismiss
2 for failure to exhaust non-judicial remedies, the Court may look beyond the pleadings and decide
3 disputed issues of fact. Id. Although Defendants bear the burden of proving exhaustion, Wyatt v.
4 Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003), "no presumptive truthfulness attaches to Plaintiff's
5 allegations, and the existence of disputed material facts will not preclude the trial Court from evaluating
6 for itself the merits of jurisdictional claims." Ritza, 837 F.2d at 369. The plaintiff must put forth specific
7 facts in declarations, affidavits, authenticated documents, or other evidence to contradict the defendants'
8 evidence to show he had exhausted administrative remedies or that some exception to exhaustion
9 applies. See Wyatt v. Terhune, 315 F.3d 1108, 1120 & n. 14 (9th Cir. 2003). Plaintiff must be notified of
10 his opportunity to develop a record. Id. at 1119. The court then decides disputed issues of fact, and
11 dismissal without prejudice is the appropriate remedy if the court determines that the plaintiff has failed
12 to exhaust administrative remedies. Id. at 1120.

### IV.  DISCUSSION

14 Because Defendants claim that Plaintiff failed to exhaust his administrative remedies, this Court
15 will treat the Defendants' Motion for Summary Judgment as a nonenumbered motion under Federal
16 Rule 12(b), rather than a summary judgment motion pursuant to Rule 56, when considering this issue.
17 The Court will consider the exhaustion issue as a 12(b) motion with regard to Plaintiff's claim that he
18 was placed in Ad-Seg at the direction of the DA's office and police investigators without the benefit of a
19 due process hearing by jail officials at Vista Detention Facility. The Court will also address Defendants
20 Lisa Brannan, police investigator, John Morgans, District Attorney Investigator, and DDA Patricia
21 Lavermicocca's qualified immunity defense on summary judgment. Finally, the Court will address
22 Plaintiff's pending motion to amend his Second Amended Complaint.

**PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES WITH REGARD TO HIS PLACEMENT IN AD-SEG WITHOUT THE BENEFIT OF A DISCIPLINARY HEARING.**

**A. The Prison Litigation Reform Act Requires Proper Exhaustion.**

27 The Prison Litigation Reform Act (PLRA) requires that an inmate exhaust available administra-
28 tive remedies before bringing a federal action concerning prison or jail conditions. 42 U.S.C. § 1997e(a)

cc:  The Honorable Burns
     All Counsel of Record                   8                          10cv546 LAB (PCL)

1  (2008); see Porter v. Nussle, 534 U.S. 516, 524 (2002). "[T]he PLRA's exhaustion requirement applies
2  to all inmate suits about prison or jail life, whether they involve general circumstances or particular
3  episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532
4  (emphasis added). The exhaustion requirement is mandatory and unequivocal. Booth v. Churner, 532
5  U.S. 731, 741 (2001); see also Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that
6  exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

7      Exhaustion must be "proper." Woodford v. Ngo, 548 U.S. 81, 93 (2006). This means that a
8  grievant must use all steps the jail holds out, enabling the jail to reach the merits of the issue. Id. at 90.
9  An inmate must "complete the administrative review process in accordance with the applicable
10 procedural rules, including deadlines, as a precondition to bringing suit in federal court." Id. at 88.

11     Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 216 (2007). Accordingly,
12 "[t]he burden of establishing nonexhaustion . . . falls on defendants." Wyatt v. Terhune, 315 F.3d 1108,
13 1112 (9th Cir. 2003). To meet this burden, a defendant "must show that (1) a grievance procedure
14 existed and (2) [the plaintiff] did not exhaust the grievance procedure." Albino v. Baca, 697 F.3d 1023,
15 1032 (9th Cir. 2012). Relevant evidence sufficient to demonstrate an inmate's failure to exhaust
16 "include[s] statutes, regulations, and other official directives that explain the scope of the administrative
17 review process; documentary or testimonial evidence from inmate officials who administer the review
18 process; and information provided to the inmate concerning the operation of the grievance procedure . . .
19 ." Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005).

20     If the defendants meet their burden of showing the absence of exhaustion, the burden shifts to the
21 plaintiff to show that the grievance procedure was unavailable. Albino v. Baca, 697 F.3d 1023, 1032
22 (9th Cir. 2012). An inmate's subjective lack of knowledge of the grievance procedure does not render
23 administrative remedies "unavailable." Albino v. Baca, 697 F.3d 1023, 1032-33 (9th Cir. 2012).  When
24 a jail official prevents an inmate from utilizing an administrative remedy, that remedy is not "available,"
25 and the inmate need not further pursue the grievance. See Brown v. Valoff, 422 F.3d 926, 936 (9th Cir.
26 2005). "Where prison officials have effectively prevented a prisoner from using the available proce-
27 dures, for example by literally denying the prisoner access to the process, falsely claiming that the
28 prisoner could not use the process, or threatening reprisals if the prisoner used the process, courts have

held that administrative remedies were not 'available' for purposes of the PLRA." <u>Nunez v. Duncan</u>, 591 F.3d 1217, 1229 (9th Cir. 2010) (dissenting opinion). Similarly, there is an exception to the PLRA's exhaustion requirement "where a prison official renders administrative remedies effectively unavailable by improperly screening a prisoner's grievances." <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 823 (9th Cir. 2010). To use this exception, "the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." <u>Id.</u> at 823-824.

**B. San Diego County Sheriff's Department Grievance Procedures.**

Section N.1 of the San Diego County Sheriff's Department Detention Services Bureau Manual of Policies and Procedures ("Grievance Procedure") provides that inmates may submit written grievances regarding "any condition of confinement, including but not limited to: . . . 2. Classification actions . . . ." (<u>See</u> Grievance Procedure, Doc. 80-2, at 30-33.) Grievances are to be submitted on Inmate Grievance Forms (J-22) or any other writing material. When a deputy receives a grievance, it is entered into the Jail Information Management System (JIMS), along with "all related actions and responses."

The Grievance Procedure provides that "every effort should be made by a deputy who receives a grievance to handle it at his or her level." This is the first level of grievance review, and must be completed in ten days. If the deputy cannot resolve the complaint to the inmate's satisfaction, the inmate must then direct the grievance "through successive levels of command until a resolution is obtained, or until the Facility Commander reviews the grievance."

Second level review is carried out by the facility's Grievance Review Officer, who is the sworn officer designated by the Facility Commander to hear inmate grievances. Second level review also must be completed within ten calendar days.

If the Grievance Review Officer does not resolve the complaint to the inmate's satisfaction, the inmate must seek third level review. Third level review is conducted by the Facility Commander, who also has ten calendar days to respond. The Facility Commander's decision is final. (<u>See</u> Grievance Procedure, Doc. 80-2, at 30-33.)

1    The reverse side of the J-22 Inmate Grievance Form explains the grievance procedure. It states
2 that grievances can be appealed to successfully higher levels of command, and that "[i]f you appeal a
3 grievance to the level of the facility commander, his or her decision will be final." (See Doc. 80-2, at 34-
4 41.)

**C. Defendants Have Met Their Burden in Raising Exhaustion as an Affirmative Defense.**

6    Defendants have put forth evidence documenting VDF's Grievance Procedure, which requires
7 that, before an inmate can bring a lawsuit regarding any aspect of his incarceration at San Diego
8 County's jails, he must have raised the issue with both the Grievance Review Officer and the Facility
9 Commander. (See Grievance Procedure, Doc. 80-2, at 30-33.) Defendants have shown, and Plaintiff
10 does not deny, that Plaintiff failed to appeal his grievance regarding his claim that he was denied a due
11 process hearing throughout his three weeks in Ad-Seg while he as a pre-trial detainee at VDF to either
12 the Grievance Review Officer or its Facility Commander (the second and third levels of review). (Decl.
13 Of Steven Wicklander, Doc. 103-2, at 1-2; see Plaintiff's Supplemental Briefing, Doc. 107, at 1-3.)
14 Moreover, Defendants have put forth evidence that Plaintiff had not sufficiently informed the jail of the
15 nature of his grievance that he was denied a due process hearing when he was sent to Ad-Seg as a pre-
16 trial detainee at the first level of review. (Doc. 80-2, at 38-41.) Plaintiff's two first-level grievances that
17 were entered into the JIMS system state only that Plaintiff was not told the reason for his placement in
18 Ad-Seg and that he requested an explanation and identification of the persons who ordered the move.
19 The response that Plaintiff received for his grievance was that he was moved to Ad-Seg at the request of
20 the District Attorney's Office, specifically DA Investigator Morgans, and the move was approved on a
21 temporary basis by Lt. Hillen. Nowhere in Plaintiff's first-level grievance form does he complain that he
22 was denied a due process hearing specifically by jail staff. (Doc. 80-2, at 38-41.) Plaintiff has submitted
23 a grievance form that he allegedly submitted to the jail on November 18, 2009. (Doc. 107, at 7-12.) In it,
24 Plaintiff complains that he was placed in Ad-Seg without an explanation and without a disciplinary
25 hearing in violation of his due process rights. (Doc. 107, at 7-8.) However, this grievance form has not
26 been authenticated; it was not signed by a jail staff member; there is no record of it in the jail grievance
27 system; and Plaintiff has not submitted any evidence or affidavit that this document was in fact
28 submitted to the jail. Moreover, even if the document were authenticated, this grievance form would not

1 have been submitted within the 10-day deadline for initial grievance or appeal required under the
2 Grievance Procedure rules. Thus, Defendants have met their burden in showing that Plaintiff has failed
3 to exhaust his administrative remedies according to VDF's Grievance Procedures.

**D. Plaintiff Hasn't Met Burden of Showing that the Jail Grievance Procedure was "Unavailable."**

In his Second Amended Complaint and in his supplemental briefing opposing Defendants' motion, Plaintiff alleges that he "was told the matter couldn't be appealed beyond [the] review" of Sgt. Weidenthaler and another (unidentified) sergeant. (Doc. 52; Doc. 107.) However, Plaintiff's allegation, which is unsupported by any declaration or affidavit, is disputed by Sgt. Weidgenthaler in a signed declaration. (Decl. of Weidenthaler, Doc. 103-1, at 2.) Also, the grievance form itself, which Plaintiff does not deny receiving, instructs that grievances are appealable to successively higher levels of command and that only the Facility Commander's decision is the final one. (Doc. 80-2, at 35-41, Exhibits J and K.) Thus, Plaintiff cannot rely on this unsupported allegation to show that the Jail Grievance Procedure was unavailable.

Plaintiff also argues that he submitted multiple requests for an explanation for his isolation while in Ad-Seg but received no immediate response from the jail officers. Whether or not this unsupported allegation is true, the fact of the matter is that his grievance form was accepted by the jail on September 29, 2009, and Plaintiff received a response from Sgt. Weidenthaler on October 3, 2009, answering Plaintiff's request for an explanation for his placement in Ad-Seg. (Doc. 103-1, at 4-5). Plaintiff was told that "Mr. Morgans of the District Attorney's Office requested the temporary move" and that the move was approved on a temporary basis by Lt. Hillen. (Doc. 103-1, at 4.) At this point, Plaintiff had enough information to make a claim for improper placement without a disciplinary hearing in Ad-Seg by Lt. Hillen in violation of his due process rights but he failed to do so, or properly document that he tried to do so, in a timely fashion. Plaintiff claims that he tried to submit a grievance on his placement in Ad-Seg for an entire month after receiving his first-level response; however, he failed to submit any evidence documenting the details of the exact claim he tried to make during this month period. The only piece of evidence that Plaintiff has submitted documenting his attempt to file a claim for improper placement in Ad-Seg without a disciplinary hearing in violation of due process is dated November 18, 2009; however, this document has not been signed as being received by jail staff; it has not been

authenticated in any way; and it is not supported by any sworn declaration or affidavit. What's more, this document would have been filed after the deadline for filing a grievance as outlined in the Grievance Procedures. Plaintiff claims that his attempts to file a timely grievance on the due process issue that is the subject of this lawsuit were stymied by jail officials, but he has failed to produce any evidence to that effect up to this point in time.

Finally, Plaintiff has submitted evidence that he filed a four-page letter on the Sheriff's Department's grievance form on December 23, 2009 and that the form was received by Sgt. Kanoss in January 2010. (Doc. 107, at 9-10.) This form was not entered in the JIMS because it was deemed an inmate request, not a grievance. (Id. at 9.) In the letter, Plaintiff complained that he was placed in Ad-Seg at the direction of DA Investigator Morgans and that he had been consistently stonewalled by deputies who refused to accept his grievances for a variety of reasons, including because the action was not deemed a grievance because DA Investigators and detectives are not considered jail staff. (Doc. 107, at 9-10.) The grievance form shows that Sgt. Kanoss signed the form on January 11, 2010, but that he deemed it not a grievance but an inmate request. (Id. at 9.) In his response to the inmate request, Sgt. Kanoss stated the following: "This is not grievable at the level seek guidance through attorney." (Id.) Plaintiff argues that the grievance process was effectively exhausted at this point because the jail did not consider his placement in Ad-Seg at the direction of DA Investigator Morgans and detectives to be a grievable offense. (Doc. 107.) However, Plaintiff's argument fails for the following reasons. First, Plaintiff was aware at this point that Lt. Hillen approved his placement in Ad-Seg after he received his first-level response; yet, Plaintiff makes no mention that his grievance is directed at jail staff for placing him in Ad-Seg or that he was improperly placed there without a disciplinary hearing, which is the claim in his lawsuit. Throughout the grievance process, Plaintiff has never explicitly denied that he improperly sent letters to his alleged victims while awaiting trial in violation of a court order, which was the reason he was placed in Ad-Seg to begin with. Even if this grievance were deemed a timely attempted pursuit of his administrative remedies, it does not suffice to exhaust the essence of the claim — that he was placed in Ad-Seg at the direction of the DA's office without the benefit of a due process hearing by jail officials — that he is seeking to pursue in this Court. In short, Plaintiff's grievance did not provide sufficient notice to VDF officials that Plaintiff believed he was being punished without a due process

disciplinary hearing and for no valid reason. Thus, Plaintiff has not met his burden of showing that the Jail Grievance Procedure was unavailable to him.

**E. Conclusion**

Defendants have met their burden in showing that Plaintiff failed to exhaust his administrative remedies as to the issue that he was denied a due process hearing conducted by jail officials regarding his placement in Ad-Seg at the direction of the DA's office, and Plaintiff has not met his burden of showing that administrative remedies were or are unavailable. Thus, with the portion of Defendants' summary judgment motion addressing the exhaustion issue hereby deemed a motion to dismiss under Fed. R. Civ. P. 12(b), see Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988), the Court recommends that Defendants' motion to dismiss Plaintiff's Second Amended Complaint for failure to exhaust administrative remedies be GRANTED.

## DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Public officials sued pursuant to 42 United States Code section 1983 may assert the affirmative defense of qualified immunity, which protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Prior to the Supreme Court's decision in Pearson v. Callahan, 555 U.S. 223 (2009), courts were instructed to first determine whether the facts alleged or shown by the plaintiff established the violation of a constitutional right, and then to examine whether that right was "clearly established" at the time of the defendants' alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201-202 (2001). In Pearson, the Supreme Court dispensed with Saucier's rigid sequence, and courts now have discretion to determine which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. Pearson, 555 U.S. at 236-237. Qualified immunity will apply unless the official's conduct violated a clearly established right of which a reasonable person would have known. Anderson v. Creighton, 483 U.S. 635, 640 (1987). The right to be free from restrictive pretrial confinement sought by a district attorney's office and police investigators absent a pre-deprivation showing to a state court is not "clearly established" for qualified immunity purposes. Jones v. Horne, 634 F.3d 588, 598-599 (D.C. Cir. 2011). Moreover, when a prosecutor or

investigators seek to have a pre-trial detainee placed "in 'lockdown until further notice' and his social, telephone, and mail privilege be withdrawn" for a prosecutorial and not an institutional or punitive purpose "would be entitled to [] qualified immunity" because a clearly established right of which a reasonable person would have known would not have been violated. Id. at 600.

Here, the facts before the court proferred by Defendants show that Plaintiff was placed in Ad-Seg for a prosecutorial purpose. Through various protective orders, Plaintiff was prohibited from "personal, electronic, telephonic, or written contact" with the minor victims, as well as "contact ... through a third party." (Doc. 80-2, Exhibits A, B, and C.) A few days prior to his September 8, 2009 trial, Plaintiff sent letters to two of his alleged victims. (Doc. 80-3, Exhibits E, L.) On September 11, 2009, Defendant DDA Lavermicocca learned that Plaintiff had contacted the two victims. (Lavermicocca Decl., Doc. 80-3, at 2.) On September 14, 2009, Defendant Lavermicocca appeared ex parte before Judge Goldstein regarding Plaintiff's violation of the protective orders. (Id.) Judge Goldstein ordered the seizure of all documents and photographs from Plaintiff's cell at VDF. (Id.) Also on September 14, Defendant Lavermicocca asked DA Investigator Morgans to contact officials at VDF to find out what they could do to prevent Plaintiff from contacting victims. (Lavermicocca Decl., Doc. 80-3, at 3.) Defendant Morgans advised Defendant Lavermicocca that Plaintiff could be placed in Administrative Segregation, and Defendant Lavermicocca agreed to place him in Ad-Seg based on the understanding that this would limit Plaintiff's contact with other inmates and his phone access. (Id. at 3-4.) Detective Kopchak informed Deputy Frierson, a classification deputy at VDF, that Plaintiff had violated a court order prohibiting him from contacting his victims, and that Defendant Morgans wanted him to be more closely monitored. (Rose Decl., Doc. 80-4, at 3.) Deputy Frierson exercised his discretionary authority and placed Plaintiff in Ad-Seg. (Id.) Defendants also proferred evidence that Detective Lisa Brannan took no part in Plaintiff's placement in Ad-Seg. (Doc. 80-2, 24-25 (Exhibit G).) Plaintiff remained in Ad-Seg until September 27, 2009, a total of 14 days. (Rose Decl., Doc. 80-4, at 4.)

On the other hand, Plaintiff has not put forth any evidence refuting the prosecutorial purpose behind his Ad-Seg placement. Moreover, although Plaintiff alleges that Defendants had some pretext to placing Plaintiff in Ad-Seg as a pretrial detainee, Plaintiff has not proferred any evidence to this effect. Thus, Defendant Lisa Brannan, Sheriff's Department investigator, Defendant John Morgans, District

1 Attorney Investigator, and Defendant DDA Patricia Lavarmicocca, all of whom were involved in
2 Plaintiff's criminal prosecution in state court, are all entitled to qualified immunity because their official
3 conduct in seeking his Ad-Seg placement for a prosecutorial purpose did not violate a clearly estab-
4 lished constitutional right when Plaintiff was sent to Ad-Seg without receiving a pre-deprivation
5 hearing. Defendants' motion for summary judgment should be granted on the basis of qualified
6 immunity.

**PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT SHOULD BE DENIED BECAUSE IT IS UNTIMELY AND HE HAS NOT EXHAUSTED HIS ADMINISTRATIVE REMEDIES.**

9 Plaintiff also submitted a proposed Third Amended Complaint in which he seeks to substitute
10 three John Does with named defendants Lt. K. Hillen, Sgt McNeeley, and Deputy Frierson, all VDF
11 employees and all of whom Plaintiff claims were previously unknown to him and were involved in his
12 claim that he was improperly placed in Ad-Seg without a disciplinary hearing in violation of due
13 process. (Doc. 88.) Defendants argue that Plaintiff's amendment would prejudice Defendants because it
14 is untimely and would be futile in any event. (Doc. 97, at 4.) The Court agrees that granting leave to
15 amend would be unfair to Defendants because it is untimely and it will ultimately be futile. Plaintiff has
16 failed to exhaust his administrative remedies regarding the jail's failure to conduct a disciplinary hearing
17 before sending Plaintiff to Ad-Seg as a pretrial detainee. The Court should deny Plaintiff's motion to
18 amend his complaint a third time, because Plaintiff has not put forth any facts or evidence that would
19 cure the deficiency and reverse Plaintiff's failure to exhaust his administrative remedies. See Myles v.
20 Sullivan, 2010 WL 4628688, at *4 (E.D. Cal. November 8, 2010). Thus, Plaintiff's motion to amend
21 should be DENIED. (Doc. 88.)

### V. CONCLUSION

23 For the foregoing reasons, the court RECOMMENDS that Defendants' motion to dismiss for
24 failure to exhaust administrative remedies be GRANTED, that Defendants' motion for summary
25 judgment should be GRANTED in favor of all Defendants on qualified immunity grounds, and that
26 Plaintiff's motion to amend should be DENIED.

27 This Report and Recommendation is submitted to United States District Judge Burns, pursuant to
28 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1©) of the United States District Court for the Southern

District of California. Any written objections to this Report and Recommendation must be filed with the Court and a copy served on all parties on or before **March 29, 2013.** The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before **April 8, 2013.** The parties are advised that failure to file either of these documents within the specified time periods may waive the right to raise those objections on appeal of this Court's order. Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: March 15, 2013

Peter C. Lewis
U.S. Magistrate Judge
United States District Court

cc: The Honorable Burns
All Counsel of Record