# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUBERT DYMITR HARASZEWSKI, | CASE NO. 10cv0546-LAB (PCL) |
| Plaintiff, | **ORDER OVERRULING OBJECTIONS TO REPORT AND RECOMMENDATION;** |
| vs. | **ORDER GRANTING SUMMARY JUDGMENT; AND** |
| LISA BRANNAN, et al., | **ORDER DENYING MOTION TO AMEND** |
| Defendants. | [DOCKET NUMBERS 80, 88.] |

**Background**

This is a civil rights action pursuant to 28 U.S.C. § 1983 brought by Hubert Haraszewski, a prisoner in state custody. His claims concern events when he was a pretrial detainee in the San Diego County jail. Haraszewski originally brought two general claims: first, that his cell was illegally searched, and second that he was put into administrative segregation ("Ad-Seg") for punitive purposes without the required disciplinary hearing.

The first claim was dismissed for several reasons; chief among them was the fact that the officers were acting in obedience to a state judge's order. The second claim is still pending, and is the subject of a summary judgment motion. Haraszewski has also filed a motion to file a third amended complaint.

Haraszewski was accused of molesting four minors. (He has since been convicted.) While he was awaiting trial and under orders to have no contact with the victims, the parents of two of the minors contacted prosecutors to report that Haraszewski had written letters to their children. One letter is more upbeat in tone and discusses Haraszewski's memories of and fondness for the victim. (*See* Mot. for Summ. J., Ex. E.) The other dwells on his deep attachment to the victim, and sense of betrayal at his victim's ending the relationship, and eventually reporting him. (*Id*., Ex. L.) Both letters remind the victims he will see them soon, and attempt to shape or influence their testimony at trial. Prosecutors brought these communications to the attention of a state court judge who, on September 14, 2009, ordered Haraszewski's cell searched and all documents, photographs, and writings seized. The search was carried out that same day, and Haraszewski was moved to administrative segregation ("Ad-Seg") for nearly two weeks.[1]

The first claim was dismissed, chiefly because officers who conducted the cell search were carrying out a court order, and as such were entitled to quasi-judicial immunity. The second claim is that officers placed him in Ad-Seg for two weeks immediately following the cell search, without giving him a disciplinary hearing as required. This is the sole remaining claim.

Defendants moved for summary judgment on the remaining claim, and the matter was referred to Magistrate Judge Peter Lewis for report and recommendation. Judge Lewis entertained Haraszewski's motions for additional discovery (Docket nos. 90, 95-99) but denied them, a ruling Haraszewski did not object to. *See* Fed. R. Civ. P. 72(a). Haraszewski requested, and was granted, additional time in which to file his opposition to the motion for summary judgment, but he never filed one. Judge Lewis then ordered supplemental briefing on the issue of exhaustion of administrative remedies, one of the four grounds for summary

---

[1] The second amended complaint ("SAC"), which is the operative pleading in this case, alleges that Haraszewski was kept in Ad-Seg for "roughly three weeks." (SAC (Docket no. 52) at 2.) He also swears that "prior to Sept. 27, 2009, 17 days after I was isolated, I'd still received no explanation or notice regarding the placement." (Obj. to R&R, 9:5–7.) But his own sworn statements and evidence confirm he was actually released from Ad-Seg on September 27, less than two weeks after he was placed there. (*See, e.g.*, Pl.'s Suppl. Br. (Docket no. 107) at 1:22–27.)

judgment Defendants raised. Haraszewski filed his supplemental brief (Docket no. 107), the only time he ever opposed summary judgment on any grounds.

Judge Lewis issued his report and recommendation (Docket no. 110) (the "R&R"). In seventeen pages of analysis and discussion, the R&R recommended granting summary judgment on the basis of non-exhaustion. Haraszewski then filed seventeen pages of objections to the R&R; Defendants filed a nine-page reply to his objections; and Haraszewski submitted an eleven-page response to their reply, which the Court accepted for filing as a sur-reply. In short, Haraszewski has had a full and complete opportunity to address the issue of exhaustion.

**Legal Standards**

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id*. "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court reviews *de novo* those portions of the R&R to which specific written objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

The standard for summary judgment, and a discussion of the Prison Litigation Reform Act's exhaustion requirement are set forth in the R&R, and the Court does not repeat those here. The Court does, however, note that the Supreme Court has emphasized recently and in strong terms that proper exhaustion is mandatory, and that this requires a prisoner to make proper use of all steps of the grievance process that is provided, so that jail officials can reach the merits of the issue. *See Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006). The R&R correctly notes that it is Defendants' burden to establish that a grievance procedure existed and that Haraszewski didn't properly exhaust it. *See Wyatt v. Terhune*, 315 F.3d 1108, 1112 (9th Cir. 2003). If they meet this burden, the burden shifts to Haraszewski to show that the grievance procedure was unavailable. *See Albino v. Baca*, 697 F.3d 1023, 1032 (9th Cir. 2012).

A prisoner need not exhaust unavailable remedies, and a remedy is unavailable if jail officials prevent an inmate from utilizing it, *see Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005), or improperly screen grievances out. *See Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010). Screening of grievances is improper if the reasons are inconsistent with or unsupported by applicable regulations. *Id*. at 823–24. The remedies provided do not need to meet federal standards, and they need not be plain, speedy, or effective. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

The purposes of the exhaustion requirement include giving prison officials a fair opportunity to resolve a complaint. *Woodford*, 548 U.S. at 94. This means, among other things, that the grievance must "provide enough information . . . to allow [jail] officials to take appropriate responsive measures"). The type of exhaustion required is that which allows jail officials to resolve disputes before being haled into court. *See Jones v. Bock*, 549 U.S. 199, 204 (2007).

**Discussion**

Haraszewski objects seriatim to various parts of the R&R, but hardly any of the objections have any bearing on whether he is entitled to relief. His objections, for example, claim he had an extremely convincing opposition to the motion for summary judgment that for some reason was never received, that there was no investigation at the time about whether he sent the letters, that a four-page written document submitted on a grievance form is improperly referred to as a letter rather than a grievance, and so on. Ordinarily the Court would review all these matters *de novo*, but objections that do not in any way affect his entitlement to relief are moot and the Court will not address those. *See DeFunis v. Odegaard,* 416 U.S. 312, 316 (1974) (holding federal courts lack power to decide moot questions). The Court will, however, address specific objections that do not go to moot or immaterial matters.

Haraszewski's opposition to the motion for summary judgment, and objections and sur-reply to the R&R contain many factual representations and are attested to under penalty

/ / /

of perjury.[2] It bears emphasis that many of Haraszewski's attestations under penalty of perjury and pleaded facts are inconsistent and contradictory. For instance, in places, Haraszewski says he proffered written grievances while in Ad-Seg but staff refused to accept them. Elsewhere, he alleges that he kept asking staff questions and giving them notes, but it was only after he talked with Sgt. that he learned he could file a written grievance. He asks the Court to accept his sworn representations as admissible evidence. This creates two problems.

First, Haraszewski can't create a genuine issue of material fact at this point by contradicting his earlier sworn testimony. *See Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir.1991) (holding that party cannot create issue of material fact with an affidavit contradicting the party's own prior deposition testimony). Nevertheless, the Ninth Circuit has cautioned courts to exercise caution when applying this rule, and to apply it only when the affidavit relied on is found to be a sham. *See Nelson v. City of Davis*, 571 F.3d 924, 927–28 (9th Cir. 2009).

Second, submitting new evidence in objections and a sur-reply isn't a permissible way of responding to a motion for summary judgment, and has the effect of shifting the focus of the litigation. Haraszewski received a notice pursuant to *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc) and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) warning him of this. As the procedural history suggests, shifting and arguments have characterized Haraszewski's claims thus far. This results in his claims being something of a moving target, and Defendants and Judge Lewis understandably cannot be held responsible for anticipating what new evidence Haraszewski would submit now, at the last minute. This renders Defendants' briefing and the R&R somewhat less useful than it would otherwise be. Nevertheless, it is in all parties' interest and the public interest to adjudicate Haraszewski's claims without needless delay or waste of resources. *See* Fed. R. Civ. P. 1.

---

[2] The Court sustains Haraszewski's objection that his declaration in opposition to the motion for summary judgment was not adequately attested to under penalty of perjury. Even if his attestation wasn't adequate before, he has now made clear he swears under penalty of perjury its contents are true.

The Court will accept that what Haraszewski says in his objections and sur-reply are what he really meant to say all along, and will consider his newly-submitted evidence along with his previous evidence in order to determine whether he could successfully amend, or whether his claims cannot be salvaged. The Court is mindful of its obligation to construe all evidence in the light most favorable to Haraszewski, and to deny summary judgment if any rational trier of fact could resolve the issue in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 25 (1986).

The Court notes, however, that not everything contained in a sworn declaration or affidavit is admissible as evidence, nor will it necessarily help him resist summary judgment. For example, incompetent testimony, speculation, and legal conclusions do not serve as a basis for resisting summary judgment. *See* Fed. R. Civ. P. 56(c)(4) (declarations used to resist summary judgment must be based on personal knowledge and set forth facts that would be admissible in evidence); *Nelson v. Pima Community College*, 83 F.3d 1075 (9th Cir. 1996) (speculation is insufficient to create a genuine issue of material fact). Nor may Haraszewski rely on conclusory, self-serving sworn statements lacking detailed facts and supporting evidence. *See FTC v. Publishing Clearinghouse, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). Mere allegations are insufficient. *Anderson*, 477 U.S. at 248.

**Whether Haraszewski Complied With Grievance Appeal Requirements**

*Woodford* made clear that proper exhaustion includes compliance with any required appellate process. 548 U.S. at 85–86, 90–91. The San Diego County Sheriff's Department's grievance process includes an initial grievance review and two levels of appellate review. (Docket no. 80-2, Ex. I, § III.) Initially an inmate's grievance is reviewed by a deputy or other staff member, and a written response must be provided within ten days. The second level is a review by the Grievance Review Officer, who again has ten days to respond. The third level is by the Facility Commander, who again has ten days to respond. The Facility Commander's decision is final. An inmate may seek review either until his grievance is resolved to his satisfaction, or until the Facility Commander reviews the grievance. The instructions on the grievance forms also mention the three levels, and tell inmates to expect

responses to each level of review within ten days. Haraszewski complains that no one would provide him with copies of the rules, and that the instructions on the form they pointed him to were inadequate. But the instructions are not inadequate; they identify the three levels and tell inmates how to pursue grievances at the three levels. The fact that he didn't understand the instructions, or didn't realize what they required, doesn't render the grievance procedures unavailable. *See Albino*, 697 F.3d at 1033.

The degree of specificity required in a grievance is determined by the grievance process itself, not the PLRA. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (citing *Jones*, 549 U.S. at 218. Here, the grievance procedures (Docket no. 80-2, Ex. J) provide that instructions for completing the Inmate Grievance Form are found on the form itself. The form tells inmates to describe the reason for their grievance and to be specific. A grievance that doesn't specifically describe the reason for the complaint but instead forces officials to guess what the inmate wants or conduct an investigation to figure it out, doesn't comply with the regulations, and doesn't suffice to exhaust administrative remedies. *See Woodford*, 548 U.S. at 90–91 (holding that proper exhaustion demands compliance with procedural rules).

A grievance need not contain every detail or fact a plaintiff ultimately relies on, but (unless the grievance process requires more), it must always provide at least enough information to allow officials to take appropriate responsive measures. *Griffin*, 557 F.3d at 1120–21. "[A] grievance [only] suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Id.* at 1120. For example, in *Griffin* a prisoner had requested a lower-bunk assignment for medical reasons, which a nurse had granted. He then filed grievances requesting a ladder. What officials didn't know, and what the plaintiff failed to tell them, was that staff was disregarding the nurse's order. That was held to be insufficient to allow prison officials to take corrective action. Similarly, in *McCollum v. Cal. Dept. of Corr. & Rehab.*, 647 F.3d 870, 876 (9th Cir. 2011), prisoners complained that prison policies failed to provide for and accommodate certain Wiccan religious needs. They did not, however, complain that the problem was caused by lack of paid Wiccan chaplains, and the Ninth Circuit held the claims pertaining to lack of paid Wiccan chaplains were unexhausted.

Haraszewski submitted or tried to submit three different groups of grievances. At first, while he was in Ad-Seg, he says he tried to submit grievances[3] several times but officers either wouldn't take them or else answered his questions brusquely. After several attempts, Sergeant Weidenthaler accepted two written grievances on September 29. Those written grievances, (Mot. for Summ. J., Exs. J & K), describe the grievances he tried to submit earlier. All the grievances in this group—the written grievances and the ones he says he tried to submit earlier—complain that he didn't know why he was in Ad-Seg, and he didn't know at whose orders he was sent there. His grievances asked for answers to those questions. The only other thing he asks in this set of grievances is that jail officers stop refusing to accept his grievances. Sgt. Weidenthaler gave him answers to his two questions (Obj. to R&R at 2:22–28, 8:9–15, 10:20-21), and in his November 18 grievance form, Haraszewski said he had learned why he was moved. (Obj. to R&R, Ex. W ("I learned that [District Attorney Investigator] Morgans and [Detective] Brannan wanted me placed in the hole so I would not have access to a phone.")

Accepting his evidence at face value, Haraszewski asked those two questions and, because he was dissatisfied with the answers, kept asking. Because answers to those two questions were all he said he was asking for, it appears the officers who answered his questions (even if he was dissatisfied with the answers) were giving him a favorable response. He construes the early answers as stonewalling. Either way, the only portion of his grievance at this stage was that he wanted answers to those two questions; he did not request a hearing, or complain about not having received one.

The motion for summary judgment argued that Haraszewski failed to seek the required second or third level review of his grievances. In response, Haraszewski argues that

---

[3] The evidence isn't clear how many times Haraszewski attempted to submit something in writing, as opposed to making oral complaints. *See Albino*, 697 F.3d at 1039 ("[Plaintiff's] oral complaints did not put the jail on some sort of constructive notice that would excuse exhaustion.") There is no evidence that Haraszewski followed the required procedures in his earlier attempts to submit grievances, or that whoever he tried to submit them to was required to accept them at the time. For example, grievance procedures allow inmates to submit written grievances only when they are in a place they have permission to be, and grievances need not be accepted if exigent circumstances prevent it. (Mot. for Summ. J., Ex. I at 2.)

Sgt. Weidenthaler's response to the September 29 grievance counted as the final level of review. (Docket no. 107 at 1:17–26, 2:21–3:1.) But this is beside the point, because Haraszewski's first set of grievances (the two he submitted, as well as the ones he says he tried to submit) <u>did not raise the issue he is now litigating</u>, *i.e.*, due process violations because of placement in Ad-Seg without a hearing. A review of his grievances (the ones he submitted and the ones he says he submitted or tried to submit) shows he never raised those, and he himself admits he didn't. (*See* Obj. to R&R, 7:3–5 ("[The grievances addressed by Sgt. Weidenthaler] did not concern the due process violations").)

After this stage, the R&R concludes, Haraszewski was required to submit appeals within ten days after receiving a reply. The Court agrees with Haraszewski's objection that the procedures don't appear to include such a limit (the 10-day period is the time within which grievances must be responded to), and **SUSTAINS** this objection solely as to the timeliness issue.

Haraszewski submitted a November 18, 2009 grievance form as an exhibit to his supplemental briefing on the exhaustion issue. He swears he dropped it in the mail box (one permitted method of filing a grievance) and a receipt was returned to him, leading him to assume it had been received. Whether this grievance was ever properly received is unclear, but uncontroverted evidence shows it was not accepted and processed. (*See* Mot. for Summ. J., Ex. I at 2 (grievance procedures describing proper acceptance and processing of written grievances).) There is no evidence to show why this happened; Defendants deny receiving it, and Haraszewski has no knowledge of whether it was received or, if so, by whom. He argues that because the sheet returned to him was folded and taped, it must have been processed. (*See, e.g.*, Obj. to R&R, 9:22–23.) But there is no evidence taping and folding indicates that a grievance has been processed, and the instructions on the grievance form don't give him any reason to assume that. The only evidence he has is his sworn statement that he received one page of the grievance back. The form's instructions say "The page you receive will contain your own explanation of your grievance and the signature of the person who accepted your grievance." Because the page Haraszewski submits as

evidence doesn't include a signature, it wasn't reasonable to assume that the form had been accepted and was being processed.

Haraszewski says he assumed a response was on the way, and waited patiently for an answer. (Obj. to R&R, 7:22–25 ("I waited patiently and optimistically, thinking another interview or written response may eventually follow . . . but after a month I gave up on that, too.")) The instructions on the grievance form, however, would have told him that a response was required within ten days. So even if the lack of signature on the form didn't alert him to the fact that the grievance hadn't been logged and wasn't being processed, the long delay should have put him on notice that something was wrong. It is easy to imagine reasons why a full grievance form might not be received; for example, a page might become detached in the mail. His conclusions about deliberate delays or attestations not based on personal knowledge about attempts to stonewall him by throwing away his grievance are not evidence.

The November 18 grievance complains about the cell search, unresponsiveness to the earlier grievance, and being put into Ad-Seg without an explanation. This was the first and only time a hearing is mentioned ("No disciplinary hearing of any kind was conducted") and the first time he complains he should not have been put into Ad-Seg at all. In other words, the November 18 grievance was the only one to ever mention the claims he is now raising.

Under *McCollum* and *Griffin*, it is clear that merely mentioning Ad-Seg or raising questions relating to Ad-Seg, as he did before, is insufficient to raise and exhaust the disciplinary hearing issue. A grievance need not identify the legal theories an inmate is relying on. *McCollum*, 647 F.3d at 876–77. But, by the same token, it must alert jail officials to the nature of the wrong for which redress is sought, and the source of the problem. *Id.* at 876. Putting Defendants on "constructive notice" in some other way would not suffice. *See Albino*, 697 F.3d at 1039 (*citing Macias v. Zenk*, 495 F.3d 37, 43–44 (2d Cir. 2007)) (holding that putting defendants on constructive notice of claims does not excuse exhaustion). Here, that means Haraszewski was required to ask for a hearing, complain that he had not

received one, or at the very least argue that he was improperly placed in Ad-Seg. He didn't even attempt to do any of those things until, at the earliest, November 18. And even then, he knew his grievance for some reason hadn't been accepted, and never tried to inquire into that or correct it. There was, and is, no reason to believe that the failure to process that grievance is attributable to Defendants.

Haraszewski waited until December 23 to submit a new set of complaints. The R&R refers to this as a letter submitted on grievance forms. and Haraszewski objects, arguing it was in fact a grievance. This document was received and signed January 11 by Sgt. Kinoss, who deemed it not to be a grievance. Whether it really was a grievance or something else is a question of law, but the answer doesn't affect the outcome of this case in any way. So for the sake of convenience, the Court will refer to this as a grievance as well.

This grievance identifies the date and time of the incident as "Ongoing, combined complaint." It begins by saying "I'm going to combine the prior, unaddressed grievances into one and hope for a more reasonable response." It then complains about the cell search, being put into Ad-Seg at Morgans' direction, not being given an explanation for his Ad-Seg placement, refusal of staff to accept grievances, not being told what issues are grievable, a counselor's failure to send him instructions on how to use the grievance form (other than telling him the instructions were on the form), and failure to properly train the officers who conducted the search. It focuses on failure to explain who ordered him put into Ad-Seg, and why. In pertinent part, it says:

> On the same day [as the search took place] I was placed in Administrative Segregation (the hole) also at the direction of DAI Morgans. No explanation for either action was given, and it required upward of 3 weeks, numerous unanswered requests, and a grievance that was first torn up and thrown away by a deputy, then submitted directly to a Sergeant, before I received any answer at all about who had ordered the seizure and the placement in the hole, and why. Even then the information was minimal and grudgingly given.

(Pl.'s Suppl. Br. (Docket no. 107) at 9–10 (pages 1 and 2 of the complaint).) While Haraszewski mentions being in Ad-Seg, the only focus here is on being told who ordered it and why; as at first, there is no mention of a disciplinary hearing.

/ / /

1 | Sgt. Kinross deemed this not to be a grievance and told Haraszewski to contact his attorney. Even if this was improper, it does not amount to preventing him from exhausting his remedies. *See Albino*, 697 F.3d at 1034–35 (holding that officer who told detainee to consult his attorney for help was not interfering with exhaustion, and noting that telling detainees to consult their lawyers is generally proper). After this, Haraszewski never submitted any grievances pertaining to Ad-Seg placement, nor appealed any.

The reasons why Haraszewski's grievances were sometimes rejected or unprocessed is unclear. Haraszewski himself has no evidence showing that they were improperly rejected or screened out, and there are many permissible reasons they might be. It is clear, however, that he was able to, and did, make use of the grievance process with some success. Had he tried to raise the disciplinary hearing issue while he was still in Ad-Seg instead of nearly two months later, or had he properly exhausted his claim, it is unknown what success he might have had. A disciplinary hearing at that late date would have been pointless, but proper exhaustion would at least have allowed Defendants to offer Haraszewski a more detailed explanation, which he claims he wanted, as well as to create a record, and perhaps convince Haraszewski he wasn't wronged and shouldn't sue. *See Woodford*, 548 U.S. at 89 (noting that purpose of exhaustion requirements include allowing officers to create a useful record, and potentially convince the losing party not to sue in federal court). Haraszewski therefore has not met his burden of showing administrative remedies were unavailable to him through no fault of his own.

Haraszewski now argues he raised the issue of the disciplinary hearing in all three sets of grievances, but it is clear this is not so. He even admits he did not initially raise it. (*See* Obj. to R&R, 7:3–5.) All three grievances are filed as exhibits, and they speak for themselves. Haraszewski's beliefs or conclusions about the effect of the grievances, or his efforts to characterize what they say, are not competent evidence.

/ / /
/ / /
/ / /

Finally, the only time Haraszewski raised the issue he now raises about a disciplinary hearing, or even tried to, was in the November 18, 2009 grievance.[4] That grievance was not addressed to or reviewed by the Facility Commander, and by itself cannot suffice to exhaust the issue at all three required levels. He never drafted or tried to file a second- or third-level appeal. (*See* Wicklander Decl. in Supp. of Defs.' Suppl. Br. (Docket no. 103-2), at 2.) He never claims he thought he had appealed to the final level or was led to believe he had. Rather, he only claims to have achieved "something more than 'first level review'" and that neither of the two sergeants would pass his grievances along for higher-level review. (*See* Pl.'s Suppl. Br. at 4: 14–19.)[5] Under the regulations, the appeals process is not complete until either the inmate's grievance is resolved favorably to himself, or until the Facility Commander reviews the grievance at the third level. He cannot say whether such an appeal would have been accepted and processed, because he never tried to file one.[6]

///

---

[4] He says he attached the November 18 grievance to the December 23 grievance, but a review of that document shows he included it and unspecified other grievances as an illustration of how his grievances were not being properly processed. He didn't ask that the November 18 grievance be considered or processed. And if he had, it would have been properly screened out, because it was missing a page and the date was very old.

[5] There is no evidence the sergeants were obligated in any way to help Haraszewski draft or file his grievances, or to pass them along to anyone else for additional review. The instructions and procedures make clear the review is conducted by higher officials; lower officials such as the sergeants are not responsible for that, or for helping inmates file appeals.

[6] Haraszewski offers sworn testimony that Sgt. Weidenthaler told him he had nothing to appeal because his grievance had been favorably resolved. He also swears that Sgt. Kinross in response to the December 23 grievance told him orally and in writing that he needed to speak with a lawyer to pursue his complaints. (*See* Obj. to R&R, 10:9–11.) Neither sergeant ever claimed to be the Facility Commander or that review at the highest level had been completed; rather, Haraszewski swore he didn't know who the Facility Commander was. (Pl.'s Suppl. Br., 4:19–20 ("I had no way of knowing if there was a higher authority available for grievances.")). Haraszewski's conclusion that he didn't know if he could appeal higher than the sergeants is contradicted by the record, because the instructions on the grievance forms he used tell him that, unless they are favorably resolved, grievances must be appealed to the Facility Commander level before they are final. Even if Haraszewski didn't know the Facility Commander's name, he knew that the two sergeants were not that person. Furthermore, although the Court does not weigh evidence at this stage, Defendants point out that Haraszewski has spent extensive time in San Diego jails and prison, so his claims of ignorance about jail life are unsupported by the record. (*See* Reply to Obj. to R&R (Docket no. 117), at 6:6–18.)

**Merits**

Notwithstanding the fact that Haraszewski didn't exhaust his claim, the Court has reviewed his claim on the merits, and concludes Defendants' motion for summary judgment would be granted anyway. In spite of the fact that it was not filed on time, the Court will accept Haraszewski's representations that his supplemental opposition, attached to his objections to the R&R, is his intended opposition to the motion for summary judgment.

If a detainee will be put into administrative segregation for punitive reasons, a disciplinary hearing is required. *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir.1996). But, the government can lawfully inflict restrictions on pretrial detainees in order to maintain security. *See Bell v. Wolfish*, 441 U.S. 520, 540 (1979). "Absent a showing of an express intent to punish on the part of detention facility officials, . . . if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id*. at 538–39. In other words, if a detainee is put in administrative segregation for security reasons, rather than out of "an express intent to punish," no hearing is required. *See Jones v. Horne*, 634 F.3d 588 (D.C.Cir., 2011); *Peoples v. CCA Detention Centers*, 422 F.3d 1090 (10th Cir. 2005); *Rapier v. Harris,* 172 F.3d 999 (7th Cir. 1999); *Martucci v. Johnson*, 944 F.2d 291, 294–95 (6th Cir. 1991).[7]

In this case, there is no evidence Haraszewski broke any jail rules, or that anyone thought he did. The rule was a court order intended to protect minors who were victims of molestation, and also to prevent witness tampering. Although Haraszewski alleges the placement was approved by a jail officer, Lt. Hillen, it was done at the request of John Morgans, a District Attorney's office investigator. Defendants dispute this, and present unrebutted evidence the decision-makers were others, non-Defendants. But no one has suggested the moving force was a jail official. Rather, it seems to be agreed that the segregation request came from someone connected with prosecutors.

---

[7] The Ninth Circuit has made such a holding as well, albeit in an unpublished opinion, *Miramontes v. Chief Dept. of Corr.*, 86 Fed. Appx. 325, 326 (9th Cir. 2004). Even assuming the Ninth Circuit were to split with the other circuits and disapprove the holding of *Miramontes*, however, Defendants would still be entitled to qualified immunity.

Protecting people inside or outside the detention facility qualifies as a security concern, and not punishment, and this is an appropriate motive for state officials both inside and outside a jail. *See Jones v. Horne*, 634 F.3d at 597 (prosecutor who requested that detainee's communications be restricted to prevent his interference with witnesses outside the jail was acting for security reasons, not punitive reasons).

Here, the state court judge's determination that Haraszewski had written the letters, and that the minor victims needed to be protected from his communications is both reasonable and unreviewable. And, looking at the letters themselves, there is ample reason to believe Haraszewski wrote them. First, his name is on them, and he admits the return address is his. The parents of both victims expressed no doubt that Haraszewski wrote them. And both letters display a depth of personal knowledge of the two victims and Haraszewski's relationship to them, as well as the status of Haraszewski's case. The motion for summary judgment authenticates them and describes how they came into the prosecutor's hands. Whoever requested Haraszewski's segregation could reasonably have relied on this same evidence, and on the state judge's determination.

Haraszewski's conclusion that neither of the letters attempted to evoke false testimony and therefore they were harmless is not competent evidence, nor is it even plausible. First, merely receiving letters from their molester would disquiet most victims, and the communications with the second victim bears this out. Second, both letters remind the minors that Haraszewski is going to see them again at trial. The first letter is somewhat more friendly in its tone, reminding the minor of a hearing Haraszewski and the minor were both at and discussing the upcoming court appearance and the minor's testimony. (Ex. E at 4 (Docket no. 80-3 at 9).) It tells the victim that prosecutors and police have lied repeatedly, and urges the victim not to repeat lies on the stand. (*Id*.)

The second letter is somewhat more disturbing, and would naturally be disturbing to a molestation victim. It says "I've had your address for a long time," (Ex. L. at 2 (Docket no. 80-5 at 6)). For several pages, it describes Haraszewski's deep emotional attachment to the victim, sense of betrayal at receiving a "breakup" letter, and sense of even greater betrayal

on learning that the victim had reported him.  Explicitly, and at great length, it accuses the victim of lying to police about Haraszewski, and tells the victim not to lie in court again. (*Id*. at 5 (Docket no. 80-5 at 9).)

While it isn't clear how the letters were sent, Defendants' evidence shows they thought Haraszewski had obtained their addresses and sent out his two letters under the guise of legal mail. Defendants' evidence shows that the request to restrict Haraszewski to Ad-Seg, where mailing privileges are more restricted, was motivated by the desire to prevent him from having any further contact with the victims.

Haraszewski counters this by arguing that restricting him to Ad-Seg didn't offer complete protection. He points out that he had some phone access and could circumvent limitations on mailing by being devious (*See, e.g.*, Opp'n to Mot. to Dismiss FAC (Docket no. 35), at 4:9–26;[8]  Opp'n to Mot. for Summ. J. (Docket no. 116-1), at 5:2:–7:21.) He also argues that restricting his phone usage was not a valid security measure, because he had only written to his victims, not called them. (*Id*. at 6:18–22.) He argues that Defendants' beliefs about what security Ad-Seg would provide were ill-founded and mistaken. (*Id*. at 7:5–21.) He also accuses the prosecutors of failing to ask for enough restrictions at the hearing, and describes the hearing as an unjust "rubber stamp." (*Id*. at 8:27–9:23.)

All this is really beside the point. The issue is Defendants' intent, *i.e.*, whether they were motivated by a desire to punish (as Haraszewski speculates), or security concerns (as their evidence shows) — not whether the restrictions were as effective as they could have been. Defendants' statements about what they believed the conditions of Ad-Seg to be are therefore relevant. Defendants correctly point out that Ad-Seg need not have been a perfect deterrent; rather, the relevant inquiry is whether they "might reasonably have thought that the policy would advance security interests." *See Valdez v. Rosenbaum*, 302 F.3d, 1039, 1046 (9th Cir. 2002).

/ / /

---

[8] Haraszewski's opposition to the motion for summary judgment cites to earlier statements he made under oath, such as this one, without repeating them.

Bearing in mind the *Valdez* analysis, the Court notes that Ad-Seg was reasonably related to preventing Haraszewski from contacting his victims, because his ability to communicate with the outside world, either directly (by phone or mail) or indirectly (by having other inmates pass letters for him). It doesn't matter, as Haraszewski claims, that this wasn't an exact fit, or wouldn't have been as effective as some other more restrictive measures, or might not have been the least restrictive option. *See id.* at 1046 (holding that a reasonable relationship doesn't require an "exact fit" nor need it be the "least restrictive alternative"). Furthermore, it doesn't matter whether others — Haraszewski, or even this Court — agree with Defendants' decision or think that the policy would advance legitimate security interests. *See id*. All that is required is that Defendants might rationally have thought so. *See id.* The Court also notes that segregation was requested at the time when security concerns arose, and that it was relatively brief, factors the *Valdez* court also relied on. *See id*. at 1046–47 (prosecutor's decision to request telephone restriction only when witness tampering was a concern, and not at other times, supported conclusion that motive was non-punitive).

The state court judge's decision also provides Defendants with some support here. Haraszewski's disagreement with the judge, and claims that the judge was acting punitively, carry no weight. The judge's order is presumed to be proper, and in any event is unreviewable at this point. And because the judge was acting to address security concerns, others could have reasonably determined that similar security measures were appropriate.

In the absence of any evidence showing Defendants acted for a punitive purpose, they would be entitled to summary judgment on the merits.

**Conclusion and Order**

Both the R&R and Haraszewski's objections to the R&R address other issues, but this discussion is sufficient. Haraszewski did not comply with the required grievance procedures, and thus failed to exhaust available administrative remedies. He never raised the one issue he is bringing in this action until November 18, 2009 at the earliest. Assuming he raised it then, that was the only time he did; he never appealed it to finality, as required.

/ / /

Furthermore, even if the Court were to look past the exhaustion issue and reach the merits, Haraszewski would lose on that point as well. Because there is no genuine issue of material fact for trial, Defendants are entitled to summary judgment.

In making these determinations, the Court has accepted a good deal of Haraszewski's representations at face value even though they contradict each other. Except as noted above, Haraszewski's objections to the R&R are **OVERRULED**. Haraszewski's objections other than those analyzed here don't change the outcome of this case and are therefore **OVERRULED AS MOOT**. The R&R is **MODIFIED** to include the analysis included in this order and, so modified, is **ADOPTED**.

The Court **GRANTS** summary judgment on Haraszewski's sole remaining claim. To the extent he seeks reconsideration of the Court's earlier orders, he has failed to show adequate reason and reconsideration is **DENIED**. Because it is clear Haraszewski cannot successfully amend his complaint, his motion for leave to amend is **DENIED**.

This action is **DISMISSED WITH PREJUDICE** and the Clerk is directed to enter judgment for Defendants on all claims. The pretrial conference currently on calendar for September 9, 2013, and all other pending dates, are **VACATED**. All other pending motions are **DENIED AS MOOT**.

**IT IS SO ORDERED**.

DATED: August 20, 2013

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge